**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION**

**UNSELD NANCE, SR., individually, as the natural
father and next friend of UNSELD NANCE,
JR.; and PAMELA FARROW**           **PLAINTIFFS**

v.           **CASE NO. 3:07-CV-00119 BSM (Lead Case)**

**ERIK SAMMIS, individually; JIMMY EVANS,
individually; WILLIAM JOHNSON, individually;
ROBERT PAUDERT, individually; CITY OF
WEST MEMPHIS, ARKANSAS; and UNKNOWN
ARKANSAS STATE POLICE OFFICERS, in their
official capacities**           **DEFENDANTS**

**CONSOLIDATED WITH:**

**DEBORAH FARROW and ROBIN PERKINS,
individually, and as co-administrators of the Estate
of DeAunta Farrow**           **PLAINTIFFS**

v.           **CASE NO. 3:07-CV-00189 (Consolidated Case)**

**ERIK SAMMIS, individually; JIMMY EVANS,
individually; WILLIAM JOHNSON, individually;
ROBERT PAUDERT, individually; THE CITY OF
WEST MEMPHIS, ARKANSAS**           **DEFENDANTS**

**ORDER**

On February 6, 2009, separate defendants, William Johnson, Robert Paudert, Erik Sammis, and Jimmy Evans, each in their individual capacities, (collectively referred to herein as "Defendants") moved the court to reconsider its order of February 5, 2009, denying their motion for summary judgment and motion for qualified immunity (Doc. No. 139). In support of their motion, Defendants provided the court with a DVD recording of the June 22, 2007

interview of Unseld Nance, Jr., by the Arkansas State Police (ASP). Defendants argue that Nance's deposition contradicts the statements he made in his interview to the ASP, and that Nance's self-serving deposition testimony cannot create a factual dispute to form the basis of the court's denial of their motion for summary judgment and request for qualified immunity.

The court appreciates Defendants' submission of the DVD because it clarifies Nance's statements to the ASP, to a certain extent. Without the DVD, the court had to rely on Nance's June 22, 2007 written statement, and the transcript of his interview with the ASP, which were confusing. With the DVD, the court is now able to view Nance's interview with the ASP and take notice of the demonstrations performed by Nance during the interview.

The DVD shows that Nance, a fourteen-year-old boy, was interviewed by the ASP at approximately 12:30 a.m. on June 23, 2007. During his interview, Nance explains that he and DeAunta Farrow were walking from one house to another to retrieve Nance's cell phone. While walking down the street, Farrow was playing with a toy gun. The toy gun was gray, with a black handle, and had an orange cap on the end. It did not shoot caps or pellets, but made a clicking sound when the trigger was pulled.

Nance gave the following account of the events that evening:

```
Q.   Had he been walking with it in his hand or - -
A.   Mm-hmm. In his hand, he was trying to cover it up.
Q.   So as y'all were walking he had it in his hand but - -
A.   He was trying to cover it up.
Q.   Why was he trying to cover it up?
A.   When we were walking he put it - - he had it tucked like this.
```

The video reflects that Nance places his hand under his t-shirt to demonstrate that Farrow was trying to conceal the toy gun.

It is important to note the following exchange:

Q. Was he playing like it was a real gun?
A. Uh-uh.
Q. Did you ever see him pointing at anybody with the gun or anything?
A. No.
Q. Birds or trees or  --
A. No.
Q. - - people?  When did you first see the gun, the toy gun?

Upon the request of the interviewer, Nance stands up and demonstrates how Farrow was carrying the gun.  Nance states, "He had the gun like this.  And he had the black part showing."  As he makes this statement, Nance places his right hand under his t-shirt.  The interview continues:

Q. The handle was showing?  The barrel was tucked in under his shirt?
A. He had it like this.
Q. But when these - - these men gave you all a command to get on the ground and they also gave a command for him to do what with the gun?
A. Put it on the ground.  And he had his hands up like this and the gun was pointed down.
Q. So he had the gun in his right hand?
A. Right hand.

To demonstrate, Nance raises his hands up in the air and then points to the ground.

Q. And do you know what - - did you see what he did during that time or you just - - you immediately went on the ground?
A. I was down on the ground and he was - - had his hands like this - -
Q. Okay.
A. - - and the gun was facing down.

By way of demonstration, Nance reaches under his shirt with his right hand, and then raises both hands to shoulder level. With his hands still at shoulder level, Nance completely opens his hands with a slight downward motion. Finally, Nance uses his left hand to point downward across his body toward his right side when stating that the gun was facing down. One interpretation of Nance's demonstration is that, according to Nance, Farrow left the toy gun in his waistband and raised his hands in the air. There is still a question of fact as to whether Sammis's actions were objectively reasonable, and summary judgment is not appropriate.

      The interview continued as follows:

> Q.    But when he was walking down the street, you said he had it underneath his - - carrying it underneath his shirt like this?
> A.    Mm-hmm. He had it underneath.

Nance once again places his right hand under his t-shirt.

      At the conclusion of the interview shortly after 1:00 a.m., the investigator drafted a statement for Nance to sign, purporting to summarize Nance's interview, which states in part:

> De[A]unta was carrying with his right hand as we walked it was under his shirt with the handle showing. We saw 2 men get out of a black pickup truck by a dumpster they had two flashlights. Then one of them said get on the ground. I got on the ground De[A]unta was standing. His arms were partially raised up the toy gun was in his right hand. I was looking straight and didn't see the men. They said drop the gun. De[A]unta was fixing to get on the ground when they shot.

*See* Attachments to Exhibit 5, Middleton's Aff., Defendants' Motions for Summary Judgment (Doc. Nos. 38, 40, 75, 80) ("Defs.' Motions"). The investigator read the statement

he wrote to Nance and his father. At that point, Nance signed the statement without objection.

During his deposition, Nance testified as follows:

Q. And finally, during the statement that you provided to the police, did he tell you - - the statement that you signed rather, this Exhibit Number 2, the officer wrote the statement, did he not?
A. Yes, he wrote it.
Q. Okay. Did he change anything of what you said in your original statement to him? Did you tell the officer that De[A]unta was carrying with his right hand as we walked, did you tell him that?
A. Yes.
Q. You did?
A. Yes.
Q. Okay. Did you also tell him that the - - it was under his shirt with the handle showing?
A. Yes.
Q. And when you say in the statement it was under his shirt with the handle showing, were you talking about the gun? Were you talking about the toy gun?
A. Yes.
Q. And when you said it was under his shirt with the handle showing, was that - - was this toy gun under his shirt with the handle showing at the time that Officer Sammis shot your cousin?
A. No.
Q. It wasn't?
A. No.
Q. Where was it at?
A. It was - - it was tucked in his pants.
Q. Okay. That's what I'm saying. It was tucked in his pants. So at the time that Officer Sammis shot your cousin De[A]unta Farrow, this statement is correct it was under his shirt with the handle showing; is that correct?
A. Yes.

Exhibit 3, Nance Dep. p. 49-50, *Nance* Plaintiffs' Amended Response. (Doc. No. 57); Nance Dep. p. 50, *Farrow* Response (Doc. No. 116).

5

After reviewing the video, the court cannot say that Nance's statements to the ASP, as well as his demonstrations to the ASP, are inconsistent with his deposition testimony. Even if the court simply accepted the written statement, the court would still find that there are material issues of fact in dispute as to whether the force used by the officers was objectively reasonable. This is true because, even if Nance's statements were unclear about everything else, he explicitly stated during his interview that Farrow was not pretending that the gun was real and he did not see Farrow point the toy gun at anyone. The determination of this case will depend, in large part, upon the credibility of the witnesses and the account that the jury chooses to believe. Defendants' motion is denied.

Accordingly, for the reasons set forth above, defendants' motion for reconsideration (Doc. No. 139) is denied.

IT IS SO ORDERED THIS 10th day of February, 2009.

*Brian S. Miller* (signature)
UNITED STATES DISTRICT JUDGE